IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CARL T. LAMBETH, AMY LIXL-      )
PURCELL,    CHRISTOPHER     J.   )
ESCHWEILER,    JULIE    MABE     )
ESCHWEILER, DDC LAND TRUST by    )
and   through   JULIE    MABE    )
ESCHWEILER as Trustee,           )
                                 )
            Plaintiffs,          )
                                 )
       v.                        )      1:23-CV-797
                                 )
CITY  OF  HIGH  POINT,  CITY     )
COUNCIL OF THE CITY OF HIGH      )
POINT,    GUILFORD    COUNTY     )
SCHOOLS, GUILFORD COUNTY BOARD   )
OF EDUCATION, RONALD O. PERDUE,  )
STACK FAMILY, LLC,               )
                                 )
            Defendants.          )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This case, removed from state court, raises a Second Amendment challenge to the rezoning of land in Guilford County for several potential future uses, including that of a school. Before the court are the motions to dismiss by Defendant Ronald O. Perdue (Doc. 22), the City Council of the City of High Point, the City of High Point, Guilford County Schools,[1] and the Guilford County Board of Education ("Board of Education") (collectively, the "Municipal Defendants") (Doc. 26), and Defendant Stack Family, LLC (Doc. 46),

---

[1] Guilford County Schools contends it is not authorized to litigate but moved to dismiss in any event. (Doc. 27 at 1 n.1 (citing N.C. Gen. Stat. § 115C-40).)

the consent motion to dismiss by Guilford County (Doc. 45),[2] and the motion for leave to submit additional evidence by Municipal Defendants (Doc. 55). The court heard oral argument on April 22, 2024.

Because the court concludes that it lacks subject matter jurisdiction over Plaintiffs' claims, it is precluded from reaching the merits of Plaintiffs' Second Amendment claim and instead will remand the case for further proceedings in state court.

## I. BACKGROUND

The facts outlined in Plaintiffs' amended complaint (the "complaint") (Doc. 7), which are taken as true for the purpose of the present motion, show the following:

Plaintiffs Carl T. Lambeth, Amy Lixl-Purcell, Christopher J. Eschweiler, and Julie Mabe Eschweiler are citizens and residents of Guilford County, North Carolina. (Doc. 7 ¶¶ 5-8.) Plaintiff DDC Land Trust, by and through Trustee Mrs. Eschweiler, is a trust duly created and established under the laws of North Carolina. (Id. ¶ 9.) Trustee Eschweiler institutes this action solely on behalf of the trust. (Id.)

Defendant City of High Point is a duly chartered municipality located in Guilford County, North Carolina. (Id. ¶ 10.) Defendant

---

[2] Guilford County previously moved to dismiss. (Doc. 38.) Its consent motion asks that the court resolve or moot the prior motion. (Doc. 45.)

City Council of the City of High Point is an elected governing body of the City of High Point. (Id. ¶ 11.) Defendant Guilford County is a governmental entity of the State of North Carolina. (Id. ¶ 12.) Defendant Guilford County Schools is a governmental unit of Defendant Board of Education, which operates a system of public schools in Guilford County. (Id. ¶¶ 13-14.) Defendant Stack Family, LLC ("Stack") is a limited liability company with its principal place of business in Guilford County. (Id. ¶ 15.) Defendant Ronald O. Perdue is a citizen and resident of Guilford County. (Id. ¶ 16.)

Lambeth and Lixl-Purcell own two adjacent parcels of land, Guilford County parcels 169083 and 169084, where they actively raise American Quarter horses and grow hay. (Id. ¶ 17.) Mr. and Mrs. Eschweiler own Guilford County parcel 169095, where they live. (Id. ¶ 18.) DDC Land Trust owns Guilford County parcel 169089, which is a residential lot that Mr. and Mrs. Eschweiler use primarily for recreation. (Id. ¶ 19.)

At the time of the complaint, Perdue owned Guilford County parcel 169142, (id. ¶ 21), and Stack owned Guilford County parcel 168991 and another property with an omitted parcel number, (id. ¶ 22). The complaint refers to the combination of the Perdue and Stack properties as the "rezoned property." (Id. ¶ 23.)

The only ingress and egress to the nearest public road for Plaintiffs' properties is a private easement known as Gray Lane.

3

(Id. ¶ 20.)  Gray Lane bisects the rezoned property, and all Plaintiffs must cross on a road through the middle of the rezoned property to reach the public road via Gray Lane.  (Id. ¶ 25.)

Plaintiffs allege that Guilford County Schools agreed to purchase the Perdue and Stack properties to build a kindergarten through eighth grade school.  (Id. ¶ 28.)  Upon request of Perdue and Stack, the City Council voted on June 20, 2023, to annex the properties.  (Id. ¶ 29.)  Guilford County Schools also submitted a Zoning Map Amendment Application for the annexed property, which Perdue and Stack signed.  (Id. ¶ 30.)  The City Council approved the rezoning application on June 20, 2023, which rezoned the land from Guilford County Agricultural District to City of High Point Conditional Zoning Institutional (CZ-I) District.  (Id. ¶ 31.)



(Doc. 7-2.)

Plaintiffs allege that the rezoning was a "conditional district zoning for a site-specific use as a school," as authorized by North Carolina General Statute § 160D-703(b). (Doc. 7 ¶ 41.) In Plaintiffs' view, the City Council was "singularly focused on the use of the Rezoned Property as a kindergarten – 8th grade school," though the application includes nineteen other potential uses. (Id. ¶¶ 33, 40.)

The Board of Education was deeded the rezoned property on September 19, 2023, and gained fee simple ownership. (Doc. 27-1.) The transaction was duly recorded on September 20, 2023. (Id.)[3]

Lambeth and Mr. and Mrs. Eschweiler allege that they own licensed firearms for lawful purposes, such as self-defense. (Id. ¶¶ 44-46.) These firearms include handguns, a shotgun, and rifles. (Id.) Prior to the rezoning, they have carried these firearms across the rezoned property via Gray Lane and would continue to do so were it not criminally prohibited by North Carolina General Statute § 14-269.2, which prohibits possession of firearms on "educational property." (Id. ¶ 47; Doc. 42 at 11) Plaintiffs contend that a rezoning for school use, as well as fourteen other permitted uses under the application, would "correspond to a

---

[3] The court may take judicial notice of facts that are "matters of public record." Justice 360 v. Stirling, 42 F.4th 450, 455 (4th Cir. 2022).

criminal ban on firearms." (Doc. 7 ¶ 51.)

Relying on these allegations, Plaintiffs bring three causes of action, all seeking a judgment declaring that the rezoning is "unconstitutional, void, illegal, unlawful and/or invalid," and ordering that the rezoned property be restored to its zoning classification immediately before adoption of the rezoning or the most similar zoning classification under the City of High Point's zoning classification structure. (Id. ¶¶ 82, 93, 103.) The first claim alleges that the rezoning unconstitutionally infringes upon Plaintiffs' rights to keep and bear arms under the Second Amendment to the U.S. Constitution and Article I, Section 30 of the North Carolina Constitution. (Id. ¶ 72.) The second claim alleges that the rezoning is arbitrary and capricious, clearly unreasonable, has no foundation in reason and/or is illegal. (Id. ¶ 84.) The third claim alleges that the rezoning constitutes illegal contract zoning. (Id. ¶ 97.)

The court heard oral argument on Defendants' motions to dismiss on April 22, 2024. The motions are fully briefed and ready for decision.

## II. ANALYSIS

This case's peculiar posture as it relates to removal warrants discussion before proceeding. Defendants premised removal on federal question jurisdiction under 28 U.S.C. § 1331, as claim one of the complaint alleges violations of the Second Amendment to the

6

U.S. Constitution. (Doc. 1 ¶¶ 9-10.) As to the remaining claims, Defendants contended that the court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). (Id. ¶¶ 11-16.) However, once in this court, Municipal Defendants moved to dismiss the first claim of the complaint, upon which removal was based, for lack of subject matter jurisdiction (and all claims for failure to state a claim) on October 17, 2023. (Doc. 26.) The remaining Defendants have similarly moved on various dates to dismiss all claims solely for lack of subject matter jurisdiction. (Docs. 22, 45, 46.)

Plaintiffs filed this action in Guilford County Superior Court on August 18, 2023. (Doc. 1 ¶ 1.) On September 19, 2023, at 11:05 a.m., Defendants filed a notice of removal pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1.) At some point that same day, the deeds for the rezoned property were signed, though the time of the signatures is not before the court. (Doc. 27-1.) The next day, September 20, 2023, the conveyance was recorded at 3:31 p.m. (Doc. 27-1.)[4]

As discussed below, North Carolina General Statute § 14-269.2 prohibits the possession of firearms on property "owned" by any

---

[4] After oral argument, Municipal Defendants moved for leave to submit additional evidence and filed an affidavit by the attorney who supervised the closings of the rezoned property. (Doc. 55.) The attorney attests that the signatures on the deeds occurred on September 19 in advance of the closings on September 20. (Doc. 55-1.) Plaintiffs oppose the motion for leave. (Doc. 56.) Because the information in the affidavit has no impact on the outcome here or court's analysis, the court need not consider it.

7

county board of education.  The parties dispute whether the Board of Education's ownership of the rezoned property moots Plaintiffs' Second Amendment claim but have not addressed whether the recording of the deed, or its mere signing, constitutes "ownership" under § 14-269.2.  The court therefore assumes for purposes of these motions that Municipal Defendants' position taken at oral argument, and uncontradicted by Plaintiffs, is correct — i.e., that the recording on September 20, 2023, is the relevant time that ownership began.

For the reasons set out below, the court concludes that the Board of Education's purchase of the rezoned property after the rezoning decision renders Plaintiffs' Second Amendment claim against the rezoning moot, thus destroying this court's subject matter jurisdiction.  That is because Plaintiffs' alleged injury — threat of prosecution under § 14-269.2 — now stems solely from the Board of Education's ownership.[5]

### A.    Removal and Remand

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  The party

---

[5] To the extent the Board gained some ownership interest in the rezoned property prior to the removal petition by virtue of the deed transfer, which was not recorded until the next day, one could argue that standing is the proper legal inquiry, rather than mootness.  Nevertheless, the outcome would be the same.

8

seeking removal bears the burden of proving jurisdiction by a preponderance of the evidence. <u>Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.</u>, 822 F.3d 739, 748 (4th Cir. 2016) (citing <u>Mulcahey v. Columbia Organic Chems. Co., Inc.</u>, 29 F.3d 148, 151 (4th Cir. 1994)). That is, the party "'must provide enough facts to allow a court to determine — not speculate — that it is more likely than not' that the case belongs in federal court." <u>Cannon v. AutoMoney, Inc.</u>, 1:19-cv-877, 2020 WL 3105183, at *3 (M.D.N.C. May 12, 2020) (quoting <u>Scott v. Cricket Commc'ns, LLC</u>, 865 F.3d 189, 197 (4th Cir. 2017)), <u>report and recommendation adopted</u>, 2020 WL 3104352 (June 11, 2020). Removal requires that a case "be fit for federal adjudication at the time the removal petition is filed." <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 73 (1996); <u>see also</u> <u>Nova Health Sys. v. Gandy</u>, 416 F.3d 1149, 1155 (10th Cir. 2005) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint.").

This court has the authority and, indeed, the duty to remand a case to state court if "at <u>any time</u> before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c) (emphasis added). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." <u>Mulcahey</u>, 29 F.3d at 151 (internal citation omitted). "If federal jurisdiction

is doubtful, a remand is necessary." Id. (citations omitted); see also Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639-41 (2009) (holding that where court dismisses federal claim for failure to state claim, then decision whether to hear or remand pendant state law claims is discretionary); News-Texan, Inc. v. City of Garland, Tex., 814 F.2d 216, 218 (5th Cir. 1987) (stating that where removed case becomes moot, "the question of the mootness of the suit is left for the state court, which has exclusive jurisdiction of the case and which may have different standards of mootness than do the federal courts."); Ruggier v. Go Mart, Inc., 107 F. Supp. 3d 580, 584 (S.D.W. Va. 2015) (remanding removed action after determining that it was moot).

Defendants maintain that the proximity between the conveyance of the rezoned property and the removal petition is a coincidence. In any event, they removed this case to federal court claiming federal question jurisdiction on the first claim (Doc. 1 ¶¶ 9-10) only to seek dismissal for lack of subject matter jurisdiction of the very same claim. Flip-flopping on the court's jurisdiction in this manner is known as "fraudulent removal" and has been critiqued because it unnecessarily increases litigation costs and unfairly grants defendants the value of delay. Martin v. Franklin Cap. Corp., 546 U.S. 132, 140 (2005) ("The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both

10

parties, and wastes judicial resources."); Collier v. SP Plus Corp., 889 F.3d 894, 897 (7th Cir. 2018) (describing removal followed by Rule 12(b)(1) motion as a "dubious strategy [that] resulted in a significant waste of federal judicial resources"); see generally Zachary D. Clopton & Alexandra D. Lahav, Fraudulent Removal, 135 Harv. L. Rev. F. 87 (2021). This is partly why § 1447(c) provides for "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Martin, 546 U.S. at 136 (limiting fees where the removing party "has an objectively reasonable basis for removal").

In several recent cases, plaintiffs in removed cases facing a Rule 12(b)(1) motion have moved to remand the case to state court. See, e.g., Cumberland Cnty. v. Chemours Co., 608 F. Supp. 3d 294 (E.D.N.C. 2022); Barnes v. ARYZTA, LLC, 288 F. Supp. 3d 834 (N.D. Ill. 2017); Miller v. Syracuse Univ., No. 5:21-CV-1073, 2022 WL 7505177 (N.D.N.Y. Oct. 13, 2022); Marine Depot, Int'l, Inc. v. James River Grp., Inc., No. 19-CV-24821, 2021 WL 1893064 (S.D. Fla. Feb. 22, 2021), report and recommendation adopted, No. 19-24821-CIV, 2021 WL 1890653 (S.D. Fla. Apr. 14, 2021); Bycko v. State Farm Mut. Auto. Ins. Co., Civ. No. 23-1316, 2023 WL 7411752 (D.N.J. Nov. 9, 2023).

Rather than move for remand, however, Plaintiffs here argue that there is subject matter jurisdiction (although not with respect to Guilford County (see Doc. 45 (consent motion to

11

dismiss))).  This presents an unusual scenario, as it is unclear whether Plaintiffs should be permitted to attempt to meet Defendants' burden on their behalf.  See Collier, 889 F.3d at 896 (addressing plaintiffs' standing arguments even though defendant had the burden of showing subject matter jurisdiction); Zhirovetskiy v. Zayo Grp., LLC, No. 17-CV-05876, 2018 WL 11195494, at *2 (N.D. Ill. Mar. 7, 2018) (remanding case and declining to address merits of standing argument because the defendant's "conflicting positions leave the Article III standing issue unsettled").  In any event, no party has successfully shouldered the burden of establishing subject matter jurisdiction.  Because, as set out below, Municipal Defendants' mootness arguments have merit as to all Defendants, the court concludes it lacks subject matter jurisdiction over the claim allegedly supporting removal, thus requiring remand.

### 1.  Subject Matter Jurisdiction Standard of Review

"No lawsuit may proceed in federal court unless the party seeking relief has Article III standing."  Carolina Youth Action Project v. Wilson, 60 F.4th 770, 778 (4th Cir. 2023); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.").  Standing requires (1) injury in fact, (2) that the injury is "fairly . . .

Case 1:23-cv-00797-TDS-JLW   Document 57   Filed 05/07/24   Page 12 of 30

trace[able] to the challenged action of the defendant," and (3) that it is "likely" that "the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted) (alteration and omission in original). The injury in fact "requirement ensures that plaintiffs have a 'personal stake in the outcome of the controversy.'" Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan, 504 U.S. at 560).

The Constitution's case-or-controversy requirement underpins both standing and mootness jurisprudence. Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180 (2000). Article III of the Constitution empowers federal courts to "adjudicate actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988) (citations omitted). When "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," the lawsuit becomes moot. Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (citation omitted). "When a case or controversy ceases to exist — either due to a change in the facts or the law – 'the litigation is moot, and the court's subject matter jurisdiction ceases to exist also.'"

13

Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017) (quoting S.C. Coastal League v. U.S. Army Corp of Eng'rs, 789 F.3d 475, 482 (4th Cir. 2015)).

Mootness principles "indeed blend quite directly with standing." 13B Fed. Prac. & Proc. (Wright & Miller), § 3533.1 (3d ed. Apr. 2023). "The doctrine of standing generally assesses whether [a plaintiff's personal] interest exists at the outset [of the litigation], while the doctrine of mootness considers whether it exists throughout[.]" Uzuegbunam v. Preczewski, 141 S. Ct. 792, 796 (2021). "[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." Id.; Friends of the Earth, 528 U.S. at 190 (providing nuance to observation that mootness is "standing set in a time frame").

In multi-plaintiff cases, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1651 (2017). If there is one such plaintiff, the court need not consider whether other plaintiffs have standing to seek that same form of relief. Carolina Youth Action, 60 F.4th at 778. Additionally, where plaintiffs seek declaratory relief, they must identify "some further concrete relief that will likely result from the declaratory judgment." Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Lab., 995 F.2d 510, 513 (4th

14

Cir. 1993)); Pub. Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 242 (1952) (stating that the Declaratory Judgment Act does not abrogate the traditional law of standing); S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 183 (4th Cir. 2013) (citing CATA, 995 F.2d at 513).

In a facial challenge to subject matter jurisdiction,[6] such as the one argued here, the defendant contends "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks omitted). In this instance, the plaintiff receives the same procedural protection available under a Rule 12(b)(6) consideration — i.e., the court accepts as true the facts alleged in the complaint, but not any conclusory statements or legal conclusions. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). Moreover, the court may consider "documents that are explicitly incorporated into the complaint by reference" and documents "attached to the complaint as exhibits." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails." Id. (internal quotation marks omitted).

---

[6] In a factual challenge, the defendant instead claims that the "jurisdictional allegations of the complaint [are] not true," and the court may "go beyond the allegations in the complaint" without converting the motion into one for summary judgment. Kerns, 585 F.3d at 192 (internal quotation marks omitted).

Threatened enforcement of a law against an individual may give rise to injury in fact even absent an actual threat, arrest, prosecution or other enforcement action. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014). Such a theory of standing requires "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Id. at 159 (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979)). However, the injury may not be "fairly traceable" to the governmental conduct at issue where the source of the injury is different and independent from the challenged conduct. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 413 (2013) (holding injury not "fairly traceable" where Government could rely on different and unchallenged authorities from the one at issue to effectuate the same alleged injury).

### 2. Plaintiffs' Second Amendment Claim and Mootness

Plaintiffs claim that the City Council's June 20, 2023 decision to rezone the property infringes on their right to bear arms as guaranteed by the Second Amendment by limiting their ability to carry and possess firearms over school grounds and by creating a threat of prosecution under North Carolina General Statute § 14-269.2. (Id. ¶¶ 61-65, 67.) Plaintiffs contend that the rezoning did not render the land "educational property" under

16

§ 14-269.2 but that the land will become so when a school is built. (Doc. 42 at 5-6.)

Municipal Defendants make two related contentions: first, that Plaintiffs' claims are moot; and second, that the requested relief — a declaration that the rezoning is invalid — would no longer redress any alleged infringement or threat of prosecution. (Doc. 27 at 7-8, 12.) They argue that under § 14-269.2, it is the Board of Education's <u>ownership</u> of the rezoned property that invokes the statutory prohibition and creates a threat of prosecution, <u>not</u> the rezoning. (<u>Id.</u> at 13.) Municipal Defendants point to the relevant statutory provision that states that educational property is

> [a]ny school building or bus, school campus, grounds, recreational area, athletic field, or other property owned, used, or operated by any board of education or school board of trustees, or directors for the administration of any school.

N.C. Gen. Stat. § 14-269.2(a)(1) (2023). They contend that this statute, which prohibits possessing or carrying a firearm on educational property, is already enforceable on the rezoned property because educational property includes "other property owned, used, or operated by any board of education." (<u>Id.</u> at 13.)[7]

_____

[7] Additionally, they contend that Plaintiffs can still carry firearms across Gray Lane, so long as they comply with § 14-269.2(k), which carves out an exception for those with a concealed carry permit who have a firearm on educational property in a locked compartment of their vehicle. (Doc. 27 at 14.) At oral argument, Municipal Defendants clarified that they understand this to only apply to handguns, rather than long guns,

17

Plaintiffs do not contest that the Board of Education now owns the rezoned property. (See Doc. 27-1); Justice 360, 42 F.4th at 455 (permitting the court to take judicial notice of public records). Instead, they argue that under a proper reading of § 14-269.2(a), the rezoned property is not currently "educational property," notwithstanding the change in ownership. (Doc. 42 at 5-7.) In their view, the statutory phrase "for the administration of any school" modifies "other property owned [] by any board of education," not merely "directors." (Id. at 5-6.) And if the land were already educational property, Plaintiffs contend, § 115C-518 would mandate that the Board of Education dispose of it if the rezoning were declared invalid. (Id. at 6-7.)

In reply, Municipal Defendants argue that the land is already "educational property" because placement of the last comma in § 14-269.2(a)(1) indicates that "for the administration of any school" modifies only "directors," as this comma separates "directors" from "any board of education or school board of trustees." (Doc. 44 at 2-3.) In support, Municipal Directors also point to the history of the amendments to the statute. (Id. at 4.) Moreover, they rebut Plaintiffs' position regarding § 115C-518 by noting that the statute is permissive, stating only that a board of

---

but argue that even so, the Supreme Court's Second Amendment jurisprudence would only protect Plaintiffs' firearm use for self-defense, not recreation.

education "may dispose" of property when "in the opinion of any local board of education the use of any building site [] owned or held by the board is unnecessary or undesirable for public school purposes." (Id. at 5.)

As a starting point, Municipal Defendants' arguments require resolving the parties' disagreements regarding the proper interpretation of § 14-269.2(a)(1). See Whole Woman's Health v. Jackson, 595 U.S. 30, 46-47 (2021) (interpreting state law to determine jurisdictional question); Brownback v. King, 592 U.S. 209, 218 (2021) ("[A] federal court always has jurisdiction to determine its own jurisdiction." (internal quotation marks omitted)). If the ownership of the land by the Board of Education, rather than the rezoning, creates the threat of prosecution, then a declaration stating that the rezoning is invalid would no longer afford Plaintiffs relief for their alleged injuries from Second Amendment infringement. See Clapper, 568 U.S. at 413.

The court's charge, of course, is to discern the intent of the General Assembly, which wrote the law. Whitmire v. S. Farm Bureau Life Ins. Co., 52 F.4th 153, 158 (4th Cir. 2022) ("Under North Carolina law, '[t]he goal of statutory interpretation is to determine the meaning that the legislature intended upon the statute's enactment.'" (quoting State v. Rankin, 821 S.E.2d 787, 792 (N.C. 2018))). "The intent of the General Assembly may be found first from the plain language of the statute, then from the

19

legislative history, the spirit of the act and what the act seeks to accomplish." State v. Langley, 817 S.E.2d 191, 196 (N.C. 2018) (internal quotation marks omitted).

Courts, including those in North Carolina, apply the "rule of the last antecedent" to statutes, such as the one at issue here, that include a list of terms or phrases followed by a limiting clause. See, e.g., Lockhart v. United States, 577 U.S. 347, 351 (2016) (collecting cases); Wilkie v. City of Boiling Spring Lakes, 809 S.E.2d 853, 859 (N.C. 2018) (stating that the doctrine of the last antecedent has been "previously recognized by the [North Carolina Supreme Court]"). Under that rule, "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." Barnhart v. Thomas, 540 U.S. 20, 26 (2003); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 144-46 (2012); Rule of the Last Antecedent, Black's Law Dictionary (11th ed. 2019) ("[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing.").

In Lockhart, for example, the defendant faced an increased maximum sentence under 18 U.S.C. § 2252(a)(4) for having a "prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a

minor or ward." <u>Lockhart</u>, 577 U.S. at 349. The Court was asked to determine whether the phrase "involving a minor or ward" modifies all three predicates or only the one that immediately precedes it. <u>Id.</u> Applying a "timeworn textual canon," the Court observed that the last antecedent principle "suggests that the phrase 'involving a minor or ward' modifies only the phrase that it immediately follows" — i.e., "abusive sexual conduct." <u>Id.</u> at 351; <u>see also</u> <u>id.</u> at 352-53 (noting that the canon is not a steadfast rule and considering the full context of the clause); <u>United States v. Pritchett</u>, 470 F.2d 455, 459-60 (D.C. Cir. 1972) (applying qualifier "when on duty" to last antecedent in "shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty").

Applied here, the canon of the last antecedent supports Municipal Defendants' reading because "for the administration of any school" would qualify only "directors." This would mean that ownership by the Board of Education alone renders the rezoned property "educational property."

Nevertheless, "structural or contextual evidence may 'rebut the last antecedent inference.'" <u>Lockhart</u>, 577 U.S. at 355 (quoting <u>Jama v. Immigr. and Customs Enf't</u>, 543 U.S. 335, 344 n.4

21

(2005)). Courts facing this evidence typically invoke the "series qualifier canon," which would apply a postpositive modifier to the entire preceding series when "there is a straightforward, parallel construction that involves all nouns or verbs in a series." Scalia & Garner, Reading Law, supra, at 147. Application of this rule is context-dependent and ordinarily applies where a modifier is "applicable as much to the first . . . as to the last words in a list," where a set of items forms a "single, integrated list," or where application of the last antecedent canon would require acceptance of an "unlikely premise." Lockhart, 577 U.S. at 355-56 (internal quotation marks and citations omitted). For example, the Supreme Court, in United States v. Bass, 404 U.S. 336 (1971), applied the series qualifier canon to 18 U.S.C. App. § 1202(a) (1970 ed.), a firearm possession law, which included the phrase "[a]ny person . . . who receives, possesses, or transports in commerce or affecting commerce." There, the Court construed "in commerce or affecting commerce" to extend to all three predicates in the series because an effect on commerce is required for federal jurisdiction. Bass, 404 U.S. at 339-40 (observing that this interpretation was still "certainly neither overwhelming nor decisive" and turning to extrinsic evidence); see also N.C. Dep't of Env't Quality v. N.C. Farm Bureau Fed'n Inc., 895 S.E. 2d 437, 442 (N.C. Ct. App. 2023) (declining to apply last antecedent canon to the phrase, "[a]ny agency regulation, standard, or statement of

22

general applicability").

Here, however, the last antecedent canon applies more neatly. Most critically, the series "any board of education or school board of trustees, or directors" is not a single, integrated set. The comma between "trustees" and "or" does not serve as an Oxford comma, as in the <u>Bass</u> example above. By contrast, the comma here separates, rather than integrates, "directors" and "any board of education or school board of trustees."

Moreover, application of the last antecedent canon does not result in the acceptance of an "unlikely premise." While § 14-269.2 does not define "directors," the chapter governing education includes directors alongside principals, assistant principals, and supervisors as "school administrator[s]." N.C. Gen. Stat. § 115C-287.1(a)(3).[8] It stands to reason, therefore, that "for the administration of any school" is a necessary qualifier for "directors" to preclude property they may own as individuals (such as a personal residence) from being "educational property."

By contrast, such a qualifier is not needed for "any board of education," given that the mandate of a board of education is necessarily to administer schools. <u>See</u> N.C. Gen. Stat. § 115C-40 ("Local boards of education [] shall have general control and

---

[8] At oral argument, Municipal Defendants represented that directors are generally administrators for non-public "regional" schools. This may be supported by § 115C-238.66, which provides for the powers and duties of a "board of directors" for "regional schools."

supervision of all matters pertaining to the public schools in their respective local school administrative units."). Indeed, while surplusage need not be avoided "at all costs," United States v. Atl. Rsch. Corp., 551 U.S. 128, 137 (2007), extending "for the administration of any school" to property owned by any board of education would appear to infuse an unnecessary degree of redundancy. See Lockhart, 577 U.S. at 356-57 (discussing interaction of canon of the last antecedent with the canon to avoid surplusage).[9]

In addition, the legislative history of the statute supports Municipal Defendants' reading. When initially enacted, the provision read, "property owned, used or operated by any board of education, school, college, or university board of trustees or directors for the administration of any public or private educational institution." 1971 N.C. Sess. Laws, ch. 241, § 1. In 1994, the General Assembly amended the provision to read as follows: "property owned, used, or operated by any board of education, school, college, or university board of trustees, or directors for the administration of any public or private

---

[9] Though not raised by the parties, a textual argument in favor of Plaintiffs would be that the General Assembly did not repeat "by" before "directors" — e.g., "owned . . . by any board of education or school board of trustees, or by directors for the administration of any school." See Scalia & Garner, Reading Law, supra, at 148 (discussing how repetition of a "determiner," such as "by," would clarify that the modifier does not extend beyond the antecedent). Whatever merit this argument may have, it does not overcome the better arguments in favor of Municipal Defendants' position.

24

educational institution." Extra Session 1994 N.C. Sess. Laws, ch. 14, § 4.(a). Of note, the General Assembly added an Oxford comma between "used" and "operated," and, most importantly, added a comma between "trustees" and "or."

In 1999, the General Assembly amended the provision once again to its current form. 1999 N.C. Sess. Laws 211, § 1. Rather than make an integrated list — e.g., "board of education, school board of trustees, or directors" — the General Assembly maintained the comma separating "trustees" and "or," as amended in 1994.[10] This amendment history, though not decisive, supports the court's construction of the plain language of the statute.

Accordingly, considering the language of the statute and its context, <u>Lockhart</u>, 577 U.S. at 355-56, the most persuasive construction is in accord with Municipal Defendants' interpretation — i.e., that the Board of Education's ownership of the rezoned property renders it educational property under § 14-269.2. Assuming there is a cognizable threat of prosecution under § 14-269.2, it stems from the Board of Education's ownership of the rezoned property, not from the rezoning decision.

Moreover, Plaintiffs incorrectly argue that invalidating the rezoning would require the Board of Education to sell the rezoned

---

[10] The 1999 amendment also replaced "for the administration of any public or private educational institution" within § 14-269.2(a)(1) with "for the administration of any school" and separately defined "school" in § 14-269.2(a)(1b) as a "public or private school, community college, college, or university."

property. North Carolina General Statute § 115C-518 provides (with emphasis added):

> When <u>in the opinion of any local board of education</u> the use of any building site or other real property or personal property owned or held by the board is unnecessary or undesirable for public school purposes, the local board of education <u>may</u> dispose of such according to the procedures prescribed in General Statutes, Chapter 160A, Article 12, or any successor provisions thereto. Provided, when any real property to which the board holds title is no longer suitable or necessary for public school purposes, the board of county commissioners for the county in which the property is located shall be afforded the first opportunity to obtain the property.

While a local board of education may view the rezoned property as unnecessary or undesirable if it were not zoned for school use, the North Carolina General Assembly put such discretion in the hands of the local board of education, not the federal courts. Even so, the statute states the board "may dispose" of the land in such a case, not that it must. Thus, while Plaintiffs may view the ultimate ownership of the rezoned property as a natural consequence of the rezoning, § 115C-518 shows that this causal connection, if any, does not run in reverse. <u>Cf.</u> <u>Clapper</u>, 568 U.S. at 412-13 (finding injury not fairly traceable where plaintiff could "only speculate" as to how the defendants would "exercise their discretion"). And in light of the "significant federalism concerns" at play with removal jurisdiction, any doubt on this point, which is only bolstered by Defendants' inconsistency in improperly removing this case and then moving to dismiss for lack

26

of jurisdiction, must be resolved in favor of remand.  <u>Mulcahey</u>, 29 F.3d at 151.

In light of the record and the statute, the issuance of a declaration that the rezoning is unconstitutional would not redress Plaintiffs' alleged injuries.  Consequently, the court "finds that it can no longer provide [Plaintiffs] with any effectual relief."  <u>Uzuegbunam</u>, 141 S. Ct. at 796.  Plaintiffs' Second Amendment claim is thus moot.[11]

### 3.  Applicability to All Defendants

Though the arguments for remand have been raised principally in Municipal Defendants' and Plaintiffs' briefing, the court's conclusions necessarily apply to all Defendants.  Guilford County has filed a consent motion requesting that the court dismiss the claims against it without prejudice.  (Doc. 45.)  The thrust of Perdue's and Stack's Rule 12(b)(1) arguments is that the court cannot grant relief as to them because they no longer own the rezoned property.  (Doc. 23 at 6; Doc. 47 at 10-11.)  The court need not reach these motions, as Plaintiffs' Second Amendment claim against these Defendants is likewise moot for the same reasons discussed above.  Accordingly, the court lacks subject matter

---

[11] Plaintiffs allege a number of additional injuries in their complaint. (<u>See</u> Doc. 7 ¶¶ 53-67 (e.g., traffic congestion, trespassing students, noise pollution, etc.).)  On these motions, no party has argued that these injuries create standing for the Second Amendment claim. <u>Cumberland Cnty.</u>, 608 F. Supp. 3d at 298 (remanding where no party shouldered the burden of proving jurisdiction).

27

jurisdiction over the claims against Guilford County, Perdue, and Stack.

**B.    Subject Matter Jurisdiction for Remaining Claims**

Defendants' removal petition rested on the court's original jurisdiction over Plaintiffs' Second Amendment federal question claim. (Doc. 1 ¶ 10.) Part of that claim and all of the other two claims rest on state law, and the parties thus invoke this court's supplemental jurisdiction. (See id. ¶ 11 (invoking supplemental jurisdiction over state law claims; Doc. 27 at 18-22 (citing solely North Carolina law for claims two and three); Doc. 42 at 17-24 (same).)

A court may exercise supplemental jurisdiction over claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Because the court lacks original jurisdiction over any claim here, however, the court cannot exercise supplemental jurisdiction over these remaining claims. Id. (requiring as a pre-requisite that the court have original jurisdiction over some claim); 28 U.S.C. § 1447(c) (providing that "the case shall be remanded" if "it appears that the district court lacks subject matter jurisdiction"); Mitchell v. Bailey, 982 F.3d 937, 943 (5th Cir. 2020) ("In order for a federal court to invoke supplemental jurisdiction, however, it must first have original jurisdiction over at least one claim in the action."); Montefiore

28

<u>Med. Ctr. v. Teamsters Local 272</u>, 642 F.3d 321, 332 (2d Cir. 2011) ("In order to exercise supplemental jurisdiction, a federal court must first have before it a claim sufficient to confer subject matter jurisdiction."); <u>Johnson v. Lyddane</u>, 368 F. Supp. 2d 529, 532 (E.D. Va. 2005) (finding lack of jurisdiction over state law claim where no original jurisdiction existed).[12]  The court thus does not consider the parties' arguments as to the remaining claims for want of subject matter jurisdiction.

## III. CONCLUSION

For the reasons stated, remand is warranted pursuant to 28 U.S.C. § 1447(c) because the court lacks subject matter jurisdiction over Plaintiffs' claims.

IT IS THEREFORE ORDERED that the case is REMANDED to the General Court of Justice, Superior Court Division, Guilford County, North Carolina;

IT IS FURTHER ORDERED that Defendants' motions to dismiss (Docs. 22, 26, 38, 45, and 46) are DENIED without prejudice as moot.

---

[12] Notably, this is not a case where the court undeniably had original jurisdiction over the sole federal claim and could dismiss it for failure to state a claim and remand the pendent state law claims.  <u>Carlsbad Tech., Inc.</u>, 556 U.S. at 638-41 (holding that decision whether to retain jurisdiction over pendent claims is discretionary).  It is also distinguishable from a non-removed case where a court has diversity jurisdiction at the time of the complaint, but the required amount-in-controversy is subsequently lost.  <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 112-13 (4th Cir. 1995) (holding that court has discretion on whether to remand state law claims).

IT IS FURTHER ORDERED that Municipal Defendants' motion for leave to submit additional evidence (Doc. 55) is DENIED as moot.

/s/ Thomas D. Schroeder<br>
United States District Judge

May 7, 2024